UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DONALD W. SANDERS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00024-SRC |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**Memorandum and Order**

Petitioner Donald W. Sanders seeks to vacate his sentence under 28 U.S.C. § 2255. Sanders essentially challenges federal jurisdiction, alludes to an alleged violation of his speedy trial rights, and claims that his counsel provided ineffective assistance. Upon careful review, the Court finds that all of Sanders's arguments lack merit as the Court had jurisdiction, defense counsel cannot be ineffective for failing to raise meritless claims, and Sanders waived any speedy trial defense that he may have had when he pleaded guilty. As such, the Court finds that Sanders is not entitled to an evidentiary hearing or relief under Section 2255, and therefore denies his Motion to Vacate.

**I.     Statement of facts**[1]

On January 14, 2019, Sanders, a convicted felon, was an occupant of a white Ford pickup truck being driven by his brother, Marty Luke. Law enforcement tried to stop the truck, but Luke fled. Eventually, the truck crashed, and Sanders and Luke were both arrested. Law enforcement located four firearms inside of the truck and recovered another rifle that was thrown from the truck during the chase. Law enforcement also found a handgun in a motel room in

---

[1] This section is materially identical to the "Facts" section in Sanders's Guilty Plea Agreement.  *See United States v. Donald W. Sanders,* Case No. 1:19-cr-00026-SRC-2, Doc. 195 at § 4.

Poplar Bluff shared by Sanders and Luke. The firearms that were found were all previously stolen from residences in Butler County, Missouri.

On February 9, 2019, while incarcerated in the Butler County jail, Sanders had a recorded conversation with Jason Teeters. During that conversation, Sanders learned that Rebecca Golden was a possible witness against him. Sanders expressed a concern that he might be charged in federal court and told Teeters that he should tell Golden that "Black River is very cold right now."

## II.    Procedural history

In February 2019, a federal grand jury returned a one-count indictment against Sanders and Luke, charging them both with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). *See United States v. Donald W. Sanders,* Case No. 1:19-cr-00026-SRC-2, Docs. 1–2.[2] In April 2019, a federal grand jury returned a two-count superseding indictment adding an additional charge against Sanders for tampering with a witness by threat or intimidation in violation of 18 U.S.C. § 1512(b)(2)(A). Docs. 37–38.

Sanders filed a variety of pretrial motions, including a motion to dismiss Count 2 for vindictive prosecution, Doc. 49, a motion to dismiss the Indictment for selective prosecution, Doc. 50, a motion for severance, Doc. 51, a motion for disclosure of grand jury transcripts, Doc. 106, a pro se motion to dismiss Count 2 and sever Count 1 from Count 2, Doc. 120, a pro se motion to disqualify Assistant U.S. Attorney Keith Sorrell, Doc. 133, and multiple pro se motions for pretrial release, Docs. 140, 145. Because Sanders was a represented party, the Court had no obligation to entertain Sanders's pro se motions; the Court nevertheless ruled on the merits of Sanders's pro-se motions with the United States' consent. *See Abdullah v. United*

---

[2] The "Doc." numbers used in the "Procedural history" section are from *United States v. Donald W. Sanders,* Case No. 1:19-cr-00026-SRC-2.

*States*, 240 F.3d 683, 686 (8th Cir. 2001) ("A district court has no obligation to entertain pro se motions filed by a represented party."). The Court granted Sanders's motion to sever his trial from that of his brother, as the United States agreed to the severance, and denied all of Sanders's other motions on the merits. *See* Docs. 146, 149–150.

On September 16, 2020, Sanders's criminal trial commenced. Doc. 194. On the second day of trial, before the conclusion of the United States' evidence, the parties announced that they had reached a binding plea agreement, the Court conducted a lengthy plea hearing, and Sanders pleaded guilty to Counts 1 and 2. Docs. 194–195. In February 2021, Sanders filed a motion to withdraw his guilty plea and a motion for court recusal but later withdrew both motions. Docs. 279–280, 295. On March 10, 2021, pursuant to the binding plea agreement, the Court sentenced Sanders to a 110-month term of imprisonment to be followed by a two-year term of supervised release. Doc. 307. Sanders did not appeal his conviction or sentence, and he is currently serving his term of imprisonment at FCI Memphis in Tennessee with a projected release date of December 2, 2026.[3]

### A. Section 2255 motion[4]

In February 2022, Sanders filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Doc. 1. Before the Court addressed the motion, Sanders appealed. The court of appeals dismissed the appeal, but Sanders subsequently sought rehearing, which the court denied. Docs. 4–9. The court of appeals issued its mandate, and Sanders's motion is now ripe for decision. Doc. 10.

---

[3] *Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 22, 2022).
[4] The "Doc." numbers in the "Section 2255 motion" subsection come from *Sanders v. United States,* Case No. 1:22-cv-00024.

### III. Standard of review

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under Section 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003).

Claims brought under Section 2255 may be limited by procedural default. A petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). However, the Eighth Circuit has noted twice in dicta that, if the error claimed by a petitioner is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis. *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis."); *but see Tripp v. United States*, No. 1:11CV00118 ERW, 2012 WL 27930 (E.D. Mo. Jan. 5, 2012) ("constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'") (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)); *Snider v. United States*, No. 4:09CV1171 HEA, 2011 WL 6372345 (E.D. Mo. Dec. 20, 2011) (same).

Ineffective-assistance-of-counsel claims may be raised for the first time in a section 2255 motion even if they could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *United States v. Sera,* 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo*, 223 F.3d at 925. An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland,* at 687–88; *Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Similarly, counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

5

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C.A. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

## IV.  Discussion

Sanders raises four grounds for post-conviction relief. Doc. 1. In his first ground, Sanders challenges federal jurisdiction, alludes to a Speedy Trial Act violation, and claims that his counsel was ineffective for "failing to realize the U.S. Attorney's misconduct[,] manipulation, [and] manufacturing [of] jurisdiction on count[s] 1 and 2 of the indictment." Doc. 1 at p. 4. Specifically, Sanders claims "[t]he U.S. Attorney's Office manufactured jurisdiction from the state by taking over state charges and manipulating federal gun charges and federal commerce act and laws." *Id.*

In his second ground, Sanders again challenges federal jurisdiction with respect to Count 1 and again claims that "[t]he U.S. Attorney was in misconduct from the start by taking over state charges and manipulating federal gun charges and federal commerce act and laws." *Id.* at p. 5.

In his third ground, Sanders challenges federal jurisdiction for Count 2, tampering with a witness by threat or intimidation in violation of 18 U.S.C.A. § 1512(b). *Id.* at p. 7. Specifically, Sanders claims that he "had no intent to intimidate Rebecca Golden from making

6

any statements about the firearms to any federal officer.   The statement was concerning his . . . state charges."   *Id.*

In his fourth and final ground, Sanders claims that the "facts he signed off [on] do not establish that the [United States] could have proved at his trial that there was a reasonable likelihood that his comment to Teeter for R.G. was made with intent to intimidate her from speaking with a federal officer about his firearm charges."   *Id.* at 8.   The Court addresses these issues in turn.

### A. Federal jurisdiction

Sanders challenges federal jurisdiction in all four grounds, claiming that "[t]he U.S. Attorney's Office manufactured jurisdiction from the state by taking over state charges and manipulating federal gun charges and federal commerce act and laws."   Doc. 1 at pp. 4, 5, 7. Sanders also asserts that his intimidation of Golden was related to his state charges and not his federal charges.   *Id.* at p. 7.   The Court finds that Sanders's arguments lack merit.

"[T]he federal government ha[s] an interest, independent of any state interest, to ensure that an individual who is believed to have violated a federal statute is prosecuted for that violation."   *United States v. Talley*, 16 F.3d 972, 974 (8th Cir. 1994).   "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."   18 U.S.C. § 3231.   Here, Sanders violated two federal statutes:   18 U.S.C. § 922(g)(1) and 18 U.S.C. § 1512(b)(2)(A).   As the Court explains in more detail below, this Court had jurisdiction over both Count 1 and Count 2.

### 1. Count 1:   Felon in possession of a firearm

Sanders asserts that the Court did not have jurisdiction over Count 1 because he was arrested for "state charges" by "state law enforcement officers, not federal ATF agents."   Doc. 1

7

at p. 4.   Additionally, Sanders emphasizes that he "was not arrested by federal officers for federal crimes such as the commerce act he did not violate commerce or disrupt, did not get arrested for transporting said stolen firearms across state lines or bringing [them] into the United States."   *Id.* at 5.   However, while Sanders's assertions may well be accurate, they do not establish a lack of jurisdiction.

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."   18 U.S.C. § 3231. Count 1 charged Sanders with possession a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), which, in pertinent part, states:

> (g)   It shall be unlawful for any person—
>
> > (1)   who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
> >
> > to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In *Scarborough v. United States*, the Supreme Court held that under 18 U.S.C. § 922(g)(1), proof that the possessed firearm previously traveled at some time in interstate commerce is sufficient to satisfy the required nexus between possession and commerce.   431 U.S. 563, 573 (1977).   In *United States v. Perkins*, the Eighth Circuit addressed the nexus requirement, finding that "the relationship of the gun to interstate commerce needs to be only minimal." 633 F.2d 856, 859 (8th Cir. 1981).   The Eighth Circuit further found that "[i]n light of Perkins' stipulation that the gun was manufactured out of the state of Missouri, there is no error in finding that this sale within Missouri involved a gun that had moved in interstate commerce."   *Id.*; *see also United States v. Gardner*, 564 F.2d 799, 801 (8th Cir. 1977) (holding that evidence that a firearm was

8

manufactured in California and shipped by a distributor to a department store in Iowa where it was purchased by defendant, together with stipulation that defendant possessed firearm in New Mexico, was sufficient to establish required nexus between possession and commerce); *United States v. Cox*, 942 F.2d 1282, 1286 (8th Cir. 1991) (proof that the firearm was manufactured outside the state of possession establishes the required nexus between possession and commerce).

The Eighth Circuit recently reaffirmed the minimal nexus requirement in *United States v. Mattox*, 27 F.4th 668 (8th Cir. 2022), by finding a sufficient nexus where only parts of the firearm were manufactured outside of the state.  "The definition of a 'firearm' includes 'the frame or receiver of any such weapon,' 18 U.S.C. § 921(a)(3)(B), so even if the barrel was manufactured in Minnesota, testimony that the frame and other parts were manufactured in Israel and that the gun was assembled in Minnesota is sufficient to show that the gun had been in interstate commerce."  *Id.* at 675–76.

The record in Sanders's criminal case clearly shows that the United States met the minimal nexus requirement in 18 U.S.C. § 922(g)(1), and that therefore the Court had jurisdiction over Count 1.   In section 4 of his plea agreement, Sanders admitted that he was in joint possession of the following firearms found by officers in the Eastern District of Missouri during their investigation on January 14, 2019:

A Smith & Wesson, 9mm caliber pistol; .

A Taurus, .45 caliber revolver;

A High Standard, .22 caliber pistol;

A High Standard, .22 caliber pistol;

A Hi Point, 9mm caliber pistol.

Sanders also admitted that "[t] he firearms described above were all manufactured in locations other than the State of Missouri and affected interstate commerce." Plea Agrmt. at § 4. Section 3 of Sanders's Plea Agreement outlines the elements of Count 1:

> As to Count I charging the Defendant with Felon in Possession of Firearms, the Defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(l), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:
>
> *One*, the Defendant had been previously convicted of a crime punishable by a term of imprisonment exceeding one year;
>
> *Two*, at the time of his possession of a firearm, the Defendant knew that he had been convicted of a crime punishable by a term of imprisonment exceeding one year;
>
> *Three*, the Defendant thereafter knowingly possessed a firearm; and
>
> *Four*, the firearm was transported across a state line at some time during or before the Defendant's possession of it.

*Id.* at § 3. At the change-of-plea hearing, Sanders confirmed the accuracy of the facts set forth in section 4, that he understood the elements of Count I, and that he did, in fact, do all of the things set forth in the elements:

> **THE COURT:** . . . So I am now going to review with you the elements of the offenses that have been charged, that you've been charged with. The elements are those things that the United States would have to prove to a judge or a jury beyond a reasonable doubt before you could be convicted of these offenses. So I'm going to ask you to listen carefully and make sure you understand the elements of these offenses. As to Count I, the felon in possession of firearms offense, the elements are as follows:
>
> Number one, that you've been previously convicted of a crime punishable by a term of imprisonment exceeding one year; number two, at the time of your possession of a firearm, you knew that you had been convicted of a crime punishable by a term of imprisonment exceeding one year; number three, that you thereafter knowingly possessed a firearm; and, number four, that the firearm was transported across a

10

|  |  |
|---|---|
|  | state line at some point during or before your possession of it. |
|  | Do you understand all of those elements? |
| [SANDERS]: | Yes, sir. |
| THE COURT: | Did you, in fact, do all of those things? |
| [SANDERS]: | Yes, sir. |
| . . . |  |
| THE COURT: | And do you agree that all of the facts set forth in Section 4 of the guilty plea agreement are true and correct and that you, in fact, did all of those things? |
| [SANDERS]: | Yes, sir. |

Plea Tr. 18:10–22, 20:3–6.   Even in his instant Motion to Vacate, Sanders acknowledges that "[t]he firearms were *brought into* the State of Missouri legally and sold." Doc. 1 at p. 5 (emphasis added).   This acknowledgement alone satisfies the nexus requirement.   As such, the Court rejects Sanders's jurisdictional argument as to Count 1.

### 2.   Count 2:   Tampering with a witness

Sanders also asserts that the Court lacks jurisdiction over Count 2 because he "had no intent to intimidate Rebecca Golden from making any statements about the firearms to any federal officer.   The statement was concerning his . . . state charges." Doc. 1 at p. 7.   Sanders previously raised a similar jurisdictional argument in a pretrial motion to dismiss Count 2.   *See* Doc. 120.   In his pretrial motion, Sanders argued that the Court lacked jurisdiction to convict him on Count 2 because no evidence shows that he had knowledge of a federal proceeding at the time of the witness-tampering offense.   *United States v. Donald W. Sanders,* Case No. 1:19-cr-00026-SRC-2, Doc. 135 at pp. 5–6.   The Court rejected Sanders's argument, finding that Sanders contemplated the possibility of federal prosecution at the time of the Count 2 offense,

11

and that therefore the Court had jurisdiction over Count 2. *See United States v. Sanders,* No. 1:19-CR-00026-SRC, 2020 WL 1933867, at *8 (E.D. Mo. Apr. 22, 2020).

Count 2 charges Sanders was tampering with a witness in violation of 18 U.S.C. § 1512(b)(2)(A), which, in pertinent part, states:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
> . . .
> (2) cause or induce any person to—
>
>   (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

In his plea agreement, Sanders admitted that:

> On February 9, 2019, Donald W. Sanders was incarcerated in the Butler County Jail while there, he had a recorded conversation with Jason Teeters. During that conversation, Sanders learned that Rebecca Golden was a possible witness against him for the charge made in Count I. Sanders expressed a concern that the charge might be charged in federal court. Sanders made a statement to Teeters that Teeters should tell Golden that "Black River is very cold right now." **Sanders admits that this statement was an attempt to persuade Golden not to testify as to the facts in Count I.**

Plea Agrmt. at § 4 (emphasis added). Section 3 of Sanders's Plea Agreement outlines the elements of Count 2:

> As to Count II charging the Defendant with attempting to intimidate or threaten a Government witness, the Defendant admits to knowingly violating Title 18, United States Code, Section 1512(b)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:
>
> *One*, that the defendant attempted to intimidate, threaten or corruptly persuade another person;
>
> *Two*, with the intent to cause or induce the other person to withhold testimony in an official proceeding.

12

*Id.* at § 3. At the change-of-plea hearing, Sanders confirmed the accuracy of the facts set forth in section 4, that he understood the elements of Count 2, and that he did, in fact, do all of the things set forth in the elements:

> THE COURT: As to Count II, the elements are, number one, that you attempted to intimidate, threaten or corruptly persuade another person; number two, with the intent to cause or induce another person to withhold testimony in an official proceeding.
>
> Do you understand those elements?
>
> [SANDERS]: Yes, sir.
>
> THE COURT: Did you, in fact, do those things?
>
> [SANDERS]: Yes, sir.
>
> . . .
>
> THE COURT: And do you agree that all of the facts set forth in Section 4 of the guilty plea agreement are true and correct and that you, in fact, did all of those things?
>
> [SANDERS]: Yes, sir.

Plea Tr. 18:23–19:6, 20:3–6.

The record in Sanders's criminal case demonstrates that Sanders violated 18 U.S.C. § 1512(b)(2)(A), and that therefore the Court had jurisdiction over Court 2. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Accordingly, the Court rejects Sanders's jurisdictional argument as to Count 2.

**B.     Ineffective assistance of counsel**

Sanders claims that his counsel was ineffective for "failing to realize the U.S. Attorney's misconduct[,] manipulation, [and] manufacturing [of] jurisdiction on count[s] 1 and 2 of the indictment." Doc. 1 at p. 4. This argument also lacks merit. As explained above, the U.S.

13

Attorney's Office did not "manufacture jurisdiction," as Sanders violated two federal statutes. *See* 18 U.S.C. § 3231. As such, the Court finds that defense counsel was not ineffective as no legal basis existed to object to the U.S. Attorney's prosecution of a federal crime or this Court's jurisdiction. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance."). Accordingly, the Court rejects Sanders's ineffective-assistance-of-counsel arguments.

### C.     Speedy Trial Act

Last, without citing to any facts in support, Sanders alludes that his rights under the Speedy Trial Act were violated. However, the Court finds it unnecessary to reach the merits of this argument, as Sanders pleaded guilty and waived the issue. Plea Agrmt. at § 9 ("In pleading guilty, [Sanders] acknowledges, fully understands and hereby waives his rights, including but not limited to: . . . the right to be tried by a jury in a public and speedy trial . . . ."); *see also Taylor v. United States*, 204 F.3d 828, 829 (8th Cir. 2000) ("We find it unnecessary to reach the merits of Taylor's claimed violation of the Speedy Trial Act because he waived this issue. Taylor pleaded guilty to count I without ever having moved to dismiss the indictment on speedy trial grounds and without specifically reserving his right to appeal the speedy trial issue. Furthermore, he filed no direct appeal. We conclude that Taylor waived his right to raise any argument based on a violation of the Speedy Trial Act when he pleaded guilty."). As such, the Court rejects Sander's Speedy Trial Act argument.

### V.     Certificate of Appealability

The Court further finds that Sanders has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability will issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining a substantial showing is a showing the

issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings). Therefore, the Court will not issue a certificate of appealability.

## VI. Conclusion

The Court finds that the record conclusively establishes that Sanders is not entitled to relief. Therefore, the Court denies Sanders's [1] Motion to Vacate, Set Aside, or Correct Sentence, and his request for an evidentiary hearing.

Dated this 22nd day of August 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE

15